## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ROGER L. STOKES,** <br> 1616 Ralworth Road <br> Baltimore, MD 21218 <br><br>        **Plaintiff**, <br><br>   v. <br><br> **JOHNS HOPKINS UNIVERSITY,** <br> 615 N. Wolfe St. <br> Baltimore, MD 21205 <br><br><br>        **Defendant**. <br><br> <u>**Serve On:**</u>  **Resident Agent** <br>          Arthur P. Pineau, Esq., <br>          113 Garland Hall <br>          3400 N. Charles St. <br>          Baltimore, MD  21218 | ) <br> ) <br> ) <br> ) <br> )   Case No. 1:20-cv-979 <br> ) <br> ) <br> )   JURY TRIAL REQUESTED <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>COMPLAINT & DEMAND FOR JURY TRIAL</u>

Plaintiff Roger L. Stokes  sues Johns Hopkins University, and states as follows:

## <u>INTRODUCTION</u>

1.　　This is a complaint for employment discrimination.  This complaint is brought against the Defendant to redress the indignities, humiliation, embarrassment, emotional distress, economic loss, and deprivation of Mr. Stokes' right to equal employment opportunity that he suffered and is suffering as a direct result of the Defendant's discrimination against him on the basis of sex, race, hostile work place and retaliation in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000-e *et seq*. ("Title VII") and 42 U.S.C. § 1981.

As a consequence of Defendant's illegal acts, Plaintiff  suffered and has continued to suffer from unequal terms and conditions of employment, loss of earnings, mental anguish and stress and other things related to his former employment with Defendant.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to federal question jurisdiction and 28 U.S.C. § 1331, 28 U.S.C.  §1343 and 28 U.S.C.  § 1367.

3.      Plaintiff has satisfied conditions precedent to suit under Title VII including, in particular, exhaustion of administrative remedies.

4.      Venue properly lies in this judicial district because the events giving rise to the claims at issue occurred in this judicial district.

## PARTIES

5.      Plaintiff Roger L. Stokes  is a male, African American person.

6.      Plaintiff was employed by Defendant Johns Hopkins University  ("JHU").

7.      Defendant JHU  has more than 1,000 employees.

8.       During the times in which the actions occurred that are at issue in this lawsuit Defendant JHU employed Plaintiff in its Department of Environmental Health in its School of Public Health in Baltimore, Maryland.

9.      Defendant was at all relevant times Plaintiff's "employer," as defined by Title VII, 42 U.S.C. § 2000e(b).

10.     At all relevant times, Plaintiff was an "employee" of Defendant, as defined by Title VII, 42 U.S.C. § 2000e(f).

11.     On April 25, 2018 Defendant forced Plaintiff to resign after telling him that it was reducing his work hours and pay, and after mistreating and harassing him, unfairly disciplining him and subjecting him to unequal terms and conditions of employment.

12.     Plaintiff  seeks relief under Title VII and 42 U.S.C. § 1981 for employment discrimination against him by Defendant JHU.

## PROCEDURAL REQUIREMENTS

13.     On April 27, 2018 Plaintiff timely filed an administrative charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

14.      More than one hundred eighty days have elapsed since Plaintiff filed his administrative charge  of discrimination with EEOC.

15.     The EEOC completed its administrative processing of Plaintiff's administrative charge of discrimination.

16.     At Plaintiff's request, EEOC issued Plaintiff a Right to Sue Letter on January 31, 2020.

17.      Plaintiff has therefore exhausted all available administrative remedies which may be conditions precedent to bringing the instant action.

18.     Plaintiff  filed the instant action within the 90 period provided  for in the Right to Sue Letter from the EEOC.

## STATEMENT OF FACTS

19.     Plaintiff began his employment with Defendant JHU in May 1998.

20.     Beginning in January 2015 Plaintiff worked for Defendant JHU as a Budget Specialist.

3

21.     The head of Plaintiff's office was  Theresa Daniel ("Ms. Daniel").

22.     Ms. Daniel is a Caucasian, female person.

23.     Plaintiff was the only African American, male employee  in the JHU office headed by Ms. Daniel.

24.     On August 9, 2017 Plaintiff immediately needed to use the restroom and asked Ms. Daniel to briefly cover the front office to allow him to do so.

25.     Ms. Daniel refused to cover the front desk and spoke to Plaintiff in a belligerent, insensitive manner.

26.     Plaintiff was offended by the manner and tone in which Ms. Daniel spoke to him and felt he had been treated disrespectfully by her.

27.     Later that day, Plaintiff told Ms. Daniel that he felt mistreated by her.

28.     On August 9, 2017 Plaintiff met with Ms. Daniel's boss, Dr. Marsha Wills-Karp and told Dr. Wills-Karp how he had been mistreated by Ms. Daniel.

29.     Dr. Wills-Karp agreed with Plaintiff that Ms. Daniel had handled the situation in an inappropriate manner.

30.     After this situation between Plaintiff and Ms. Daniel, on September 13, 2017  a female, Caucasian co-worker, Ms. Melissa Rosenberger ("Ms. Rosenberger"), singled Plaintiff out and questioned him like a child as to whether he needed to use the restroom.

31.     As an adult,  male person, Plaintiff was offended by Ms. Rosenberger's query and tried to make her understand  that her query was inappropriately gender related and  invasive of his privacy.

32.     Ms. Rosenberger told Ms. Daniel about Plaintiff's exchange with Ms. Rosenberger before Plaintiff could do so.

4

33.     Ms. Daniel sided with Ms. Rosenberger and accused Plaintiff of being discourteous and ordered that Plaintiff "communicate with everyone in a civil and respectful manner."

34.     On September 20, 2017, Ms. Daniel singled out Plaintiff and called him into her office because Plaintiff had a Time magazine on his desk which dealt with the topics of bigotry and racism.

35.     Ms. Daniel described Plaintiff's  Time magazine "as offensive"and she ordered Plaintiff to keep his Time magazine out of sight.

36.     Ms. Daniel also required Chichona Powell, an African American, female employee, to keep the Baltimore Afro American newspaper out of sight.

37.     In contrast to Ms Powell's newspaper and Plaintiff's Time magazine, Ms. Daniel openly displayed her own personal magazines in the office.

38.     On October 3, 2017 Ms. Daniel escalated her harassment of Plaintiff by issuing a written reprimand to Plaintiff concerning the incident wherein he requested to use the bathroom, the incident with Ms. Rosenberger, and Plaintiff's Time magazine.

39.     On October 9, 2017 Plaintiff responded in writing to Ms. Daniel's written reprimand and provided his view on the incidents in which he felt singled out because of his gender and race.

40.     On April 23, 2018 Ms. Daniel caused Plaintiff to receive notice that Plaintiff's work hours and pay were being reduced and that he could accept this or resign.

41.     On April 25, 2018 Plaintiff felt he had no other choice but to submit his resignation on account of many things including but not limited to: feeling singled out,

humiliated, embarrassed, pressured, retaliated against,  abused by Ms. Daniel and threatened with loss of work hours and pay.

42.     Female employees in Ms. Daniel's office have had loud disagreements with Ms. Daniel, but in contrast to Plaintiff, they have not been reprimanded by Ms. Daniel in these situations.

## COUNT I: EMPLOYMENT DISCRIMINATION
### (Unequal Discipline Because of Gender)
### 42 USC § 2000e-2(a)

43.     Plaintiff repeats the allegations of  ¶¶ 1 to 42 as if fully set forth herein.

44.     Plaintiff was the only male on Ms. Daniel's staff and as such is a protected group member.

45.     Plaintiff was qualified for his position and meeting the legitimate expectations of his employer as evidenced by consistently satisfactory and above average performance evaluations.

46.     On October 3, 2017 Ms. Daniel disciplined Plaintiff by issuing a written reprimand of Plaintiff and threatening him with possible termination after he disagreed with her handling of situations and Plaintiff telling Ms. Daniel that he felt singled out because of his gender.

47.     In contrast to Ms. Daniel's mistreatment of Plaintiff,  female employees sometimes loudly disagreed with Ms. Daniel, accompanied by yelling and slamming of doors, but Ms. Daniels did not issue written reprimands to those female employees or otherwise discipline them as severely as Plaintiff.

48.     The reasons given by Ms. Daniel for disciplining Plaintiff Defendant was a pretext for illegal discrimination.

49.     Plaintiff's gender was the motivating factor in Defendant's disciplinary actions against Plaintiff.

50.     Defendant is discriminating and has discriminated against Plaintiff on the basis of sex.

51.     Defendant's actions are in violation of 42 USC § 2000e-2(a).


### COUNT II: EMPLOYMENT DISCRIMINATION
### (Discrimination in Terms & Conditions of Employment Because of Race)
### 42 USC § 2000e-2(a)

52.     Plaintiff repeats the allegations of  ¶¶ 1 to 51 as if fully set forth herein.

53.     Plaintiff is an African American person and as such is a protected group member.

54.     Plaintiff was qualified for his position and meeting the legitimate expectations of his employer as evidenced by consistently satisfactory and above average performance evaluations.

55.     On October 3, 2017 Ms. Daniel disciplined Plaintiff by issuing a written reprimand of Plaintiff and threatening him with possible termination after meeting with him on September 20, 2017 when Ms. Daniel objected to Plaintiff having a Time magazine on his desk.

56.     Plaintiff's Time magazine dealt with subjects such as bigotry and racism.

57.     Around the same time, Ms. Daniel also made Plaintiff's co-worker Chichona Powell, an African American person, remove from her desk area the Baltimore Afro American which is a historic and long established,  black oriented newspaper.

58.     Ms. Daniel issued a written reprimand of Plaintiff dealing with his Time magazine and threatened Plaintiff with possible termination of his employment.

59.     In contrast to Ms. Daniel's treatment of Plaintiff and Ms. Powell, Ms. Daniel openly displayed her own, personal magazines in the office.

60.     The reasons given by Ms. Daniel for disciplining Plaintiff  was a pretext for illegal discrimination.

61.     Plaintiff's race was the motivating factor in Defendant's actions against  Plaintiff.

62.     Defendant is discriminating and has discriminated against Plaintiff on the basis of race.

63.     Defendant's actions are in violation of 42 USC § 2000e-2(a).


## COUNT III
### (Defendant's Racially Discriminatory Actions in Violation of 42 U.S.C. § 1981)

64.     Plaintiff  incorporates ¶¶ 1-63.

65.     The racially discriminatory conduct alleged in Count II constitutes a violation of 42 U.S.C. § 1981.

## COUNT IV:
### (RETALIATION IN VIOLATION OF TITLE VII)
#### 42 USC § 2000e-3(a)

66.     Plaintiff repeats the allegations of  ¶¶  1 to 65 as if fully set forth herein.

67.     Ms. Daniel, who served as head of Plaintiff's office, was aware of Plaintiff's concerns that he was being inappropriately treated and singled out because of his gender in an incident involving Ms. Rosenberger and Plaintiff on or about September 13, 2017.

68.     On or about September 25, 2017 Ms. Daniel called a meeting with Plaintiff wherein Plaintiff advised Ms. Daniel that he felt inappropriately singled out because of his gender in the situation with Ms. Rosenberger.

69.     On or about October 3, 2017 Ms. Daniel reprimanded Plaintiff in writing after Plaintiff had made known his feeling that he was being singled out because of his gender concerning the incident with Ms. Rosenberger.  Ms. Daniel also  threatened Plaintiff with possible job termination.

70.     On or about October 9, 2017 Plaintiff wrote a memo to Ms. Daniel and reiterated his feeling that  he felt he was being singled out because of his gender in the situation involving Ms. Rosenberger.

71.     Plaintiff's communications to Ms. Daniel regarding being singled out because of his gender constituted protected activity.

72.     As a result of Plaintiff's communications to Ms. Daniel and Ms. Rosenberger that he was being singled out because of his gender, within days Plaintiff was reprimanded by Ms. Daniel, Plaintiff's continued employment with JHU was threatened, and Plaintiff began to suffer a series of harassing and humiliating incidents and adverse actions at the hands of Ms. Daniels, including but not limited to loss of job duties.

73.     These incidents and adverse actions described in paragraph 72 escalated until on or about April 18, 2018 when Defendant JHU singled Plantiff out and told Plaintiff that his work hours and, therefore, his pay were going to be reduced.

74.     A causal link exists between Defendant JHU's adverse actions  and Plaintiff's complaints because the series of adverse actions against Plaintiff began shortly after Plaintiff's complaints and continued thereafter.

**COUNT V:**
**(HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII)**
**42 USC § 2000e-2(a)(1)**

75.     Plaintiff repeats the allegations of  ¶¶  1 to 74 as if fully set forth herein.

76.     Plaintiff experienced unwanted harassment from a co-worker, Ms. Rosenberger, and the head of his office, Ms. Daniel.

77.     The harassment Plaintiff experienced was based on his gender as a male.

78.     The harassment Plaintiff experienced was humiliating, continuing, severe and pervasive in nature involving, including but not limited to, written reprimands, loss of job duties, threats of job loss and ultimately a threatened reduction in Plaintiff's work hours and  a resulting threat of reduction in pay, all of which altered the conditions of Plaintiff's employment.

79.     The harassment created an abusive atmosphere and interfered with Plaintiff's ability to do his job, eventually resulting in Plaintiff's resignation.

80.     JHU has liability for the hostile work environment Plaintiff suffered because the harassment was orchestrated, supported, continued and carried out against Plaintiff by one of JHU's managers, Ms. Daniel.

81.     Plaintiff reasonably believes that Defendant JHU's actions against him were in violation of 42 USC § 2000e-2(a)(1).


**WHEREFORE**,   Plaintiff requests that this Honorable Court enter judgment against Defendant; declare that Defendant's conduct is in violation of Title VII,  42 U.S.C. 2000e *et seq*., and 42 U.S.C. 1981; award Plaintiff: appropriate compensatory and punitive damages in amounts to be proven at trial for his loss and injury including, but not limited to, humiliation,

embarrassment, emotional distress, and deprivation of his right to equal employment

opportunity; back pay and front pay; transfer and/or promotion; restitution of forfeited

employment benefits; other appropriate legal and equitable relief, including, but not limited to:

correction of Plaintiff's personnel file; attorney's fees; court costs; expenses; prejudgment

interest and post-judgment interest; compensation for any additional tax burden that is incurred

by Plaintiff were it not for the discriminatory treatment to which Plaintiff was subjected; and all

other relief as justice may require.

Respectfully submitted,

/s/

_____

Roger L. Stokes

/s/

_____

Dated: April 16, 2020

Charles F. Holman,
Maryland Federal Bar No. 27425
Charles F. Holman, III, & Associates, LLC
One. N. Charles Street, Suite 350
Baltimore, MD 21201
(410) 659-7500 - voice
(410) 659-7504 - facsimile
chasfholman3@aol.com
Attorney for Plaintiff Roger L. Stokes

## JURY DEMAND

Plaintiff demands a trial by jury.

/s/

_____          Dated: April 16, 2020

Charles F. Holman,
Maryland Federal Bar No. 27425
Charles F. Holman, III & Associates, LLC
One. N. Charles Street, Suite 350
Baltimore, MD 21201
(410) 659-7500 - voice
(410) 659-7504 - facsimile
chasfholman3@aol.com
Attorney for Plaintiff Roger L. Stokes